IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL IZELL SEALS, ) | No. C 04-1569 SBA (PR) |
| Plaintiff, ) ) | **ORDER OF PARTIAL DISMISSAL AND SERVICE** |
| v. ) ) | |
| OFFICER JOHN RUSSELL, et al., ) ) | |
| Defendants. ) ) | |

## BACKGROUND

Plaintiff Michael Izell Seals, a state prisoner currently incarcerated at San Quentin State Prison and a frequent litigant in federal court, filed the instant pro se civil rights complaint under 42 U.S.C. § 1983. He has paid the full filing fee.

Even when the full filing fee has been paid, a federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. Id. § 1915A(b)(1), (2). Accordingly, the Court will screen the complaint to determine whether Defendants are required to respond.

Venue is proper in this district as the acts complained of occurred while Plaintiff was an inmate at the Lake County Jail, which is located in this district. 28 U.S.C. § 1391(b).

## DISCUSSION

### I.   Standard of Review

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins,

487 U.S. 42, 48 (1988). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Terracom v. Valley National Bank, 49 F.3d 555, 558 (9th Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

## II. Legal Claims

According to the allegations in the complaint, while Plaintiff was an inmate at the Lake County Jail, the named Defendants violated his constitutional rights. Plaintiff sets forth seven claims for relief. He alleges that he has presented these claims through the jail's grievance system.

Plaintiff seeks injunctive relief and monetary damages. It seems that Plaintiff was a pretrial detainee at the Lake County Jail when he filed his claims for injunctive relief; however, he has since been convicted and transferred to San Quentin State Prison. Because Plaintiff no longer is incarcerated at the Lake County Jail, all claims for injunctive relief are DISMISSED as moot and only claims for monetary relief remain pending. See, e.g., Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (request for injunctive relief generally rendered moot when inmate is released from prison or transferred to another prison).

### A. Excessive Force, Deliberate Indifference and Disciplinary Hearing Claims

In his first claim for relief Plaintiff alleges that jail officials used excessive force against him on April 22, 2003, that they were deliberately indifferent to his serious medical needs, and that the disciplinary hearing against him which stemmed from the April 22, 2003 incident was constitutionally infirm.

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment pretrial detainee from the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979)); see Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) ("The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment . . . . Graham therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit.")

2

(citations omitted).[1]

To determine whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of the word, the court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. See Bell, 441 U.S. at 538. Absent a showing of an express intent to punish, whether a restriction amounts to punishment will generally turn on whether there is an alternative, rational purpose for the restriction, and whether the restriction then appears excessive in relation to that purpose. See id. If a restriction or condition is not reasonably related to a legitimate goal, i.e., if it is arbitrary or purposeless, the court may infer that the purpose of the action is punishment. See id. at 539.

Here, Plaintiff alleges that on April 22, 2003, Officers John Russell and Dennis Bierman "rushed into" Plaintiff's cell and "attacked [him] by pushing [him] up against the sink as they snatched [his] arms off the wall and . . . twist[ed] both of them behind [his] back to handcuff [him]." Specifically, Plaintiff claims that as Defendant Bierman held Plaintiff's arms, Defendant Russell "slammed [Plaintiff's head] into the cement wall above [his] sink." Liberally construed, Plaintiff's allegations concerning the events of April 22, 2003 state a cognizable claim for the use of excessive force against Defendants Russell and Bierman.

Plaintiff's allegations also state a claim for deliberate indifference to his serious medical needs. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).[2] A jail official is deliberately indifferent if he knows that an inmate faces a substantial risk

---

[1] Cf. Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1043 (9th Cir. 1996) (Fourth Amendment reasonableness standard applies to allegations of use of excessive force against pre-arraignment detainee).

[2] Although a pretrial detainee's deliberate indifference claim arises under the Due Process Clause rather than the Eighth Amendment, the Ninth Circuit Court of Appeals has made clear that the Eighth Amendment serves as a benchmark for evaluating such a claim. See Carnell v. Grimm,

3

of serious harm and disregards that risk by failing to take reasonable steps to abate it. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). But medical negligence, or even gross negligence, is not enough to state a constitutional claim under 42 U.S.C. § 1983. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (gross negligence insufficient to state claim for denial of medical needs to prisoner); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (negligence or harassment related to medical problems not enough to state violation of Eighth Amendment).

In the present case, Plaintiff states that as a result of the April 22, 2003 incident, he "immediately suffered a 'lump' in the middle of [his] forehead and this also enhanced [his] already constant 'migraine headaches' as well as aggravating [his] rheumatoid arthritis." After the incident, Plaintiff complained that he "wasn't feeling good" to Defendant Russell, who refused to provide Plaintiff with medical treatment because he was "still pissed at [Plaintiff] and that [Defendant Russell] had been advised to write [Plaintiff] up in a narrative report by Sgt. Townsend."

During the April 22, 2003 incident, Plaintiff further alleges that jail officials claim that they conducted a cell search and found extra food and medication in Plaintiff's cell. Plaintiff claims that Dr. Dean from the Lake County Jail prescribed Motrin for Plaintiff's migraine and rheumatoid arthritis. Plaintiff also claims that he suffers from mental illness and takes "anti-psychotic medication." However, "due to a couple of pills being found during a cell search of [his] cell #6 on April 22, 2003," he claims that he was denied mental health treatment and medication for "2 to 3 months" by "Vonda," his case worker at the Lake County Jail's mental health department, her supervisor, Medical Director Alisha Stottsberry, and his psychiatrist, Dr. Fitian of the California Forensic Medical Group.

Plaintiff has adequately pled cognizable claims against Defendants Russell and Bierman for the use of excessive force and against Defendants Russell, "Vonda," Stottsberry and Fitian for deliberate indifference to Plaintiff's medical needs. Plaintiff's allegations fail to state a deliberate

---

74 F.3d 977, 979 (9th Cir. 1996) (Eighth Amendment guarantees provide minimum standard of care for pretrial detainees).

4

indifference claim against Sgt. Townsend; therefore, that claim is DISMISSED.

Plaintiff also alleges that he was denied his right to a fair and impartial disciplinary hearing relating to the April 22, 2003 incident. He alleges that he was denied an opportunity to present witnesses and the opportunity to "complain and argue [his] point . . . [because Hearing Officer] J. Brown asked [Plaintiff] to leave the hearing."

Under the Due Process Clause, a pretrial detainee may not be punished prior to an adjudication of guilt on criminal charges in accordance with due process of law. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). The Ninth Circuit has held that the imposition of disciplinary segregation or some other sanction against pretrial detainees as punishment for violation of jail rules and regulations is "punishment" that cannot be imposed without due process, i.e., without the procedural requirements of Wolff v. McDonnell, 418 U.S. 539 (1974). See Mitchell v. Dupnik, 75 F.3d 517, 523-26 (9th Cir. 1996) (holding that Sandin does not apply to pretrial detainees who are punished; applying due process requirements of Wolff).

Wolff established five procedural requirements. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566; see also Bartholomew v. Watson, 665 F.2d 915, 917-18 (9th Cir. 1982) (right to call witnesses is basic to fair hearing and decisions to preclude should be on case by case analysis of potential hazards of calling particular person). Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and

present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Wolff, 418 U.S. at 570.

Here, Plaintiff alleges that the evidence presented at the hearing on April 27, 2003 did not support the finding of guilt for the charge of possessing contraband, which stemmed from jail officials allegedly finding extra food and medication during the cell search on April 22, 2003. He argues that he was "found guilty of being in possession of all the evidence, even though [he] had a 'cellie.'" Plaintiff further claims that he was denied the right to call witnesses to testify at the hearing on his behalf. Liberally construed, the Court finds that these allegations present a cognizable due process claim against the hearing officers at the April 27, 2003 hearing: Officers J. Brown and D. Porter.[3]

### B.   Claims Related to Plaintiff's Placement in Isolation

#### 1.   Due Process Claim

In his second claim, Plaintiff alleges that he was held in "B-Pod Isolation" from October 10, 2003 to March 25, 2004 and that he was not given a proper hearing prior to being placed in isolation.

Disciplinary segregation as punishment for violation of jail rules and regulations cannot be imposed without due process, i.e., without the aforementioned procedural requirements of Wolff. See Mitchell, 75 F.3d at 523-26.

Plaintiff acknowledges that there were "four narrative reports written against [him]" on the following dates: April 23, 2003, June 23, 2003, July 16, 2003 and October 10, 2003. He alleges that only the October 10, 2003 narrative report filed by Chief Disciplinary Officer Jason Sestito accused him of a "Criminal Rules Violation" for the charge of "Indecent Exposure," and the prior three reports did not relate to the Indecent Exposure charges. Plaintiff alleges that Defendant Sestito

---

[3] Plaintiff names Officer W. Young as being part of the April 27, 2003 disciplinary hearing; however, Officer Young need not address Plaintiff's claim because Plaintiff did not name Officer Young as a defendant in this action.

6

presented him with the narrative report which stated that he was being "noticed" that he was being charged with Indecent Exposure; however, Plaintiff claims that he "refused to sign or say anything." He alleges that Defendant Sestito "wrote on the back of that report that [Plaintiff] pleaded guilty to the Criminal Rules Violation 314.1 PC Indecent Exposure." He also claims that Defendant Sestito "failed to get [Plaintiff's] write up and charges to a disciplinary hearing within [the] 72 hour period, so therefore [Plaintiff] won that write [up] and [he] no longer could be charged with that Criminal Rules Violation of 314.1 PC Indecent Exposure." Plaintiff further alleges that Chief Classification Officer Virginia Barajas refused to provide him with "a 30 day evaluation to determine and update [his] classification status." He claims that this refusal resulted in his being held in isolation "for no reason." He claims that he was finally released from isolation on March 25, 2004 because Defendant Barajas "pull[ed] [him] out for a[n] interview and . . . [he] explained how [jail officials] ha[d] been violating [his] constitutional rights by holding [him] in solitary confinement for that long when [he] hadn't been found guilty of no write ups nor was [his] alleged crime a violent one." He claims that he "wrote letters to Sherrif [sic] Rodney K. Mitchell and both Chief Crystal Eyerly and Chief James Bauman prior to March 25, 2004, acknowledging to them that [he] was being 'illegally' held in B-Pod as a political prisoner . . . [a]nd none of the staff supervisors mention[ed] above ever answered any of [his] letters." The Court finds that Plaintiff has stated a cognizable due process claim because he alleges he was not afforded the <u>Wolff</u> protections. Because the exact nature of Plaintiff's placement in isolation from October 10, 2003 to March 25, 2004 is unclear, the Court will order service of this claim so that the following named Defendants may address Plaintiff's claim: Sheriff Rodney K. Mitchell, Chief Classification Officer Virginia Barajas, Chief Disciplinary Officer Jason Sestito, Chief Crystal Eyerly and Chief James Bauman.

### 2. **Equal Protection Claims**

In his third and sixth claims,[4] Plaintiff alleges that various jail officials discriminated against

---

[4] Plaintiff incorrectly lists this claim as "Claim #5" on page twenty-three of his complaint; therefore, the Court will construe it as his sixth claim.

him on the basis of his race.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. See Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).  Plaintiff must demonstrate that state actors "acted with the intent to discriminate." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir. 1991).

On June 23, 2003, Officer Noble Waidelich "directly called [Plaintiff] a 'Nigger'" and "screamed very loudly and disrespectful[ly] at [him] all because [he] was being removed for a[n] alleged charge of 314.1 PC Indecent Exposure."  Assuming that Defendant Waidelich used a racial epithet, this does not tend to demonstrate an intent to discriminate against Plaintiff on the basis of his race on the facts as alleged because Plaintiff fails to allege that he was placed in isolation as a direct or proximate consequence of Defendant Waidelich's alleged racial animus.

On November 4, 2003, Plaintiff alleges that Officers McCarthy, Jon Sanders and Terry Norton filed a false inmate grievance against him and accused him of "fishing"[5] with another white inmate, Inmate Grey.  Plaintiff claims that Inmate Grey was "released . . . back into the general population C-pod from solitary confinement (isolation) . . . after [Inmate Grey] received the same write up."  In the body of the complaint, his allegations of racial discrimination based on this incident are conclusory and ambiguous.

Plaintiff alleges that on February 19, 2004, Aide Terri Flynn used a racial slur against him.

---

[5] Plaintiff alleges that "fishing" is "where two inmates throw or slide a string with a weight on one end towards another cell . . . once the other inmate [takes] control of that string [he] can now add any items he wish[es] to send to that other inmate."

8

1  A few days later, on February 21, 2004, Plaintiff claims that Officer Michael Hartman filed a
2  narrative report against Plaintiff for allegedly "cussing" at Aide Flynn and allegedly calling her a
3  "bitch."  He claims that at a disciplinary hearing before Officers Hartman, W. Hamming and I.
4  Gordon, Plaintiff was initially found guilty of violating "Major Rules #202 - Inmates will show
5  respect to jail staff at all times [and] Minor Rules #303 - Inmates will not act in ways which are loud
6  boisterous or disruptive, #204 - Inmates will not use foul or abusive language in the presence of jail
7  staff or civilians."  However, after Plaintiff complained that he was not given the opportunity to call
8  witnesses on his behalf at the hearing, he claims that he was granted a second hearing.  His second
9  hearing was conducted by Officers Russell, Eagleton and K. Johnson, and Plaintiff was found not
10 guilty.[6]  Plaintiff claims that after his first disciplinary hearing, Defendants Hamming and Gordon
11 entered B-Pod and "allowed several other 'white' inmates to cuss at them and also cuss at Aide Terri
12 Flynn."  Plaintiff claims that Defendants Flynn, Hartman, Hamming and Gordon acted with "racial
13 discrimination and discrimination."  Again, the Court finds that Plaintiff's allegations of racial
14 discrimination based on the aforementioned incidents are conclusory and ambiguous.

Plaintiff does not allege that he was placed in isolation because of his race or because of the attitudes of Defendants Waidelich, McCarthy, Sander, Norton, Flynn, Hartman, Hamming and Gordon toward African-Americans.  Thus, Plaintiff has not stated a cognizable equal protection claim against Defendants Waidelich, McCarthy, Sander, Norton, Flynn, Hartman, Hamming or Gordon.

Accordingly, Plaintiff's equal protection claims Defendant Waidelich, McCarthy, Sander, Norton, Flynn, Hartman, Hamming and Gordon are DISMISSED.

### C.     **Inadequate Grievance Procedures**

In his fourth claim, Plaintiff alleges that Chief James Bauman failed to properly respond to his grievances and inmate appeals.

---

[6] Because Plaintiff was granted a second disciplinary hearing, his due process claim against Defendants Hartman, Hamming and Gordon are DISMISSED.

There is no constitutional right to a prison administrative appeal or grievance system. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); accord Wolff v. McDonnell, 418 U.S. 539, 565 (1974) (accepting Nebraska system wherein no provision made for administrative review of disciplinary decisions). California Code of Regulations, title 15 section 3084 grants prisoners in state prisons a purely procedural right: the right to have a prison appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d).  A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest.  See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also; Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (same); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (same).  A prison official's failure to process grievances, without more, accordingly is not actionable under § 1983.  See Buckley, 997 F.2d at 495.

Accordingly, Plaintiff's claims against Defendant Bauman based on his alleged failure to process grievances are DISMISSED.

**D.    Property Claim**

In his fifth claim,[7] Plaintiff asserts a claim against Sergeant Duvall and Officer Hodell for negligent or intentional destruction of his personal property on October 10, 2003, specifically he alleges that his "temporary crown (front right tooth), which [he] had wrapped in some paper within a legal envelope" was destroyed.  However, the Court finds that Plaintiff fails to state a federal claim for relief under § 1983.

Ordinarily, due process of law requires notice and an opportunity for some kind of hearing

---

[7] Plaintiff incorrectly lists this claim as his "Claim #4" on page twenty-two of his complaint; therefore, the Court will construe it as his fifth claim.

prior to the deprivation of a significant property interest. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978). However, neither the negligent nor intentional deprivation of property states a due process claim under § 1983 if the deprivation was random and unauthorized. See Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property).

The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. See Zinermon v. Burch, 494 U.S. 113, 128 (1990) (where state cannot foresee, and therefore provide meaningful hearing prior to, deprivation statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process); King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986) (same). California law provides such an adequate post-deprivation remedy. See Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Therefore, where a prison official acts in a random and unauthorized manner to deny an inmate his property (that is, he fails to act in accord with established prison procedures), the claim must be pursued in state, not federal, court. As Plaintiff here alleges that prison officials negligently or intentionally destroyed of his personal property, Plaintiff fails to state a due process claim for deprivation of his property. As such, Plaintiff's claim fails to state a claim under § 1983 against Defendants Duvall and Hodell and must be DISMISSED without prejudice to Plaintiff bringing his claims in a proper forum.

**E.   Equal Protection Claim Relating to Plaintiff's Treatment With Regard to Others**

When challenging an inmate's treatment with regard to other inmates, courts have held that in order to present an equal protection claim an inmate must allege that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir. 1990) (same).

This applies to claims of racial discrimination: "Prisoners are protected under the Equal

1  Protection Clause of the Fourteenth Amendment from invidious discrimination based on race."
2  Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted).  Invidious racial discrimination
3  such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within
4  prisons.  See Johnson, 543 U.S. at 505-06.  A claim of racial discrimination under the Equal
5  Protection Clause requires demonstration of discriminatory intent.  Washington v. Davis, 426 U.S.
6  229, 239-40 (1976); Jeffers v. Gomez, 267 F.3d 895, 913-14  (9th Cir. 2001)  (reversing denial of
7  summary judgment based on qualified immunity on claim that prison guard targeted black inmates
8  while shooting to quell prison riot; because plaintiff alleged only that defendant shot at him, it was
9  irrelevant that all but one of the inmates shot and all inmates suffering serious stab wounds in
10 Hispanic-black riot were black).  But cf.  Walker v. Gomez, 370 F.3d 969, 973-74  (9th Cir. 2004)
11 (plaintiff need not prove discriminatory intent or impact of policy or practice he is challenging if
12 policy is suspect on its face; policy explicitly treating inmates differently by race suspect on its
13 face).

In his seventh claim,[8] Plaintiff alleges that on December 2, 2003, Defendant Sestito witnessed a white female inmate, Inmate Donna Jackson, use a racial slur without repercussion. Plaintiff claims that he witnessed Inmate Jackson call another white inmate an "ignorant fucking nigger" in front of Defendant Sestito; however, Defendant Sestito "never said one word to her at the time."  Plaintiff claims that he filed a inmate grievance against Defendant Sestito regarding this incident, and that Sergeant Monreal found his grievance "unfounded" because "[Defendant] Sestito verbally reprimanded the female for making the comments [Plaintiff has] described."  Plaintiff alleges that Defendant Sestito violated his equal protection rights by not "writing up" Inmate Jackson for this incident.  The Court finds that Plaintiff's allegations of racial discrimination based on this incident are conclusory and ambiguous.

Accordingly, Plaintiff fails to state a cognizable equal protection claim against Defendants

---

[8] Plaintiff incorrectly lists this claim as his "Claim #6" on page twenty-four of his complaint; therefore, the Court will construe it as his seventh claim.

1   Sestito and Monreal, and this claim is DISMISSED.

## CONCLUSION

1. All claims for injunctive relief are DISMISSED as moot.

2. The Court finds that Plaintiff has stated cognizable claims against Defendants John Russell and Dennis Bierman for the use of excessive force.

3. The Court finds that Plaintiff has stated cognizable claims against Defendants Russell, "Vonda,"[9] Stottsberry and Fitian for deliberate indifference to Plaintiff's medical needs. Plaintiff's deliberate indifference claim against Sgt. Townsend is DISMISSED.

4. The Court finds that Plaintiff has stated a cognizable due process claim against Officers J. Brown and D. Porter, the hearing officers at the April 27, 2003 hearing.

5. Because the exact nature of Plaintiff's placement in isolation from October 10, 2003 to March 25, 2004 is unclear, the Court will order service of this claim so that the following named

---

[9] Plaintiff did not supply the Court with the full name of Case Worker "Vonda;" therefore the Court will not direct the United States Marshall to effect service on this defendant. Instead, Plaintiff is directed to supply the Court with her full name within **sixty (60) days** of the date of this Order.

While Plaintiff may rely on service by the U.S. Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent defects of which [he] has knowledge." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987). If the marshal is unable to effectuate service through no fault of his own, e.g., because plaintiff failed to provide sufficient information and plaintiff is informed, plaintiff must seek to remedy the situation or face dismissal under Federal Rule of Civil Procedure 4(m). See Fed. R. Civ. P. 4(m) (If service of the summons and complaint is not made upon a defendant in 120 days after the filing of the complaint, the action must be dismissed without prejudice as to that defendant absent a showing of "good cause."); see also Walker v. Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (prisoner failed to show cause why prison official should not be dismissed under Rule 4(m) because prisoner did not prove that he provided marshal with sufficient information to serve official or that he requested that official be served).

This serves as notice to Plaintiff that if he fails to furnish the Court with the full name of Case Worker "Vonda" within the sixty-day deadline, his claim against Case Worker "Vonda" will be DISMISSED without prejudice pursuant to Rule 4(m).

13

Defendants may address Plaintiff's claim: Sheriff Rodney K. Mitchell, Chief Classification Officer Virginia Barajas, Chief Disciplinary Officer Jason Sestito, Chief Crystal Eyerly and Chief James Bauman.

    6.    Plaintiff's due process claim against Defendants Hartman, Hamming and Gordon are DISMISSED.

    7.    Plaintiff's equal protection claims against Defendants Waidelich, McCarthy, Sander, Norton, Flynn, Hartman, Hamming and Gordon as well Defendants Sestito and Monreal are DISMISSED.

    8.    Plaintiff's claims against Defendant Bauman based on his alleged failure to process grievances are DISMISSED.

    9.    Plaintiff's due process claim for deprivation of his property against Defendants Duvall and Hodell is DISMISSED without prejudice to Plaintiff bringing his claims in a proper forum.

    10.    Plaintiff's claims against the following named Defendants are DISMISSED WITH LEAVE TO AMEND: Sgt. Alice Riedle, Aide Teresa Efestione and Officer Robin Hauff. The roles of these defendants in the alleged constitutional violations are not clear. In his amended complaint, Plaintiff must link the aforementioned defendants to his claims by explaining what each defendant did that caused a violation of his constitutional rights.[10] See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right). Within **thirty (30) days** of the date of this Order, Plaintiff may file an amendment to the complaint including amended claims linking Defendants Riedle, Efestione and Hauff. Plaintiff shall resubmit **only** those claims

---

[10] Plaintiff is cautioned that there is no respondeat superior liability under § 1983, i.e. no liability under the theory that one is responsible for the actions or omissions of another. Liability under § 1983 arises only upon a showing of personal participation by the defendant. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

and not the entire complaint. He must clearly label the document an "Amendment to the Complaint," and write in the case number for this action. The failure to do so within the thirty-day deadline will result in the dismissal of any claims against Defendants Riedle, Efestione and Hauff without prejudice.

11. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of: (1) the complaint as well as copies of all attachments thereto (docket no. 1) and (2) a copy of this Order upon the following prison officials at the Lake County Jail: **Sheriff Rodney K. Mitchell; Chief Classification Officer Virginia Barajas; Chief Disciplinary Officer Jason Sestito; Chief Crystal Eyerly; Chief James Bauman; Correctional Officers John Russell, Dennis Bierman, J. Brown, and D. Porter; Medical Director Alisha Stottsberry; and Contract Physician Dr. Fitian of the California Forensic Medical Group.** The Clerk of the Court shall also mail a courtesy copy of the complaint and a copy of this Order to the Lake County Counsel's Office. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

12. The case has been pending for almost three years and there is no reason for further delay. In order to expedite the resolution of this case, the Court orders as follows:

a. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. In addition, no later than **thirty (30) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date their summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **thirty (30) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary

> judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may be decided in Defendants' favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c. If Defendants wish to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

        d.        The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

      13.        Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

In order to maintain the aforementioned briefing schedule, all discovery requests must be served on the opposing party on or by **July 16, 2007** and all discovery responses must be served on or by **July 31, 2007**. In the event that Defendants file a motion for summary judgment, Plaintiff shall file his opposition to the motion for summary judgment even if he intends to file a motion to compel discovery. The discovery motion shall be submitted together with Plaintiff's opposition to the motion for summary judgment, and Defendants' response to the discovery motion shall be submitted on or by the date their reply to Plaintiff's opposition is due. If the Court decides any filed discovery motion in Plaintiff's favor, he will be granted the opportunity to file a supplemental opposition to the motion for summary judgment.

      14.        All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

      15.        It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

      16.        Because this case has been pending for almost three years, **no further extensions of time will be granted in this case absent exigent circumstances**. If exigent circumstances exist, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later

1 | than **fifteen (15) days** prior to the deadline sought to be extended.

2 | IT IS SO ORDERED.

4 | DATED: 5/23/07

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEALS, | Case Number: CV04-01569 SBA |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| RUSSELL et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 23, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael Izell Seals V77488
California State Prison - San Quentin
San Quentin, CA 94974

Dated: May 23, 2007

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

G:\Sbalc2\Jon\Misc Motions\04-1569 Seals v Russell (Partial Dismiss and Service).wpd

19