IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL IZELL SEALS,<br><br>    Plaintiff,<br><br>v.<br><br>RODNEY K. MITCHELL, et al.,<br><br>    Defendants. | No. C 04-3764 SBA (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ADDRESSING PENDING MOTIONS**<br><br>(Docket nos. 59, 61, 68, 70) |

**INTRODUCTION**

Plaintiff Michael Izell Seals, a state prisoner incarcerated at San Quentin State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983 against Defendants employed by the Lake County District Attorney's Office, the Lake County Sheriff's Department and the Lake County Jail (hereinafter "LCJ"), alleging violation of his constitutional rights. Plaintiff seeks injunctive relief as well as monetary and punitive damages.

Before the Court is Defendants Rynhart's and Thomas's motion for summary judgment (docket no. 61). Plaintiff opposes Defendants' motion. One of his oppositions is entitled, "Opposition to Declaration of Defendant Lyle Thomas and Doug Rynhart. Notice of Motion and Motion for Summary Judgment" (docket no. 68), which the Court construes to be Plaintiff's motion for summary judgment.

For reasons discussed below, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

**PROCEDURAL BACKGROUND**

On September 8, 2004, Plaintiff filed this instant civil rights action while he was incarcerated at LCJ awaiting trial on criminal charges. In his complaint, Plaintiff named twenty-two Defendants and asserted eight claims alleging Fourth Amendment, equal protection, and due process violations.

In an Order dated May 23, 2007, the Court found that Plaintiff stated a cognizable Fourth Amendment claim against two Lake County Sheriff's Officers, Defendants Rynhart and Thomas, for

alleged use of excessive force during Plaintiff's arrest on February 5, 2003. The Court dismissed all other claims against the remaining Defendants for failure to state a claim upon which relief may be granted. Plaintiff's claims for injunctive relief were dismissed as moot.

Defendants Rynhart and Thomas (hereinafter "Defendants") move for summary judgment on the grounds that no triable issue of material fact exists because the force used was objectively reasonable under the circumstances and therefore, they are entitled to judgment as a matter of law. Defendants also claim that they are entitled to qualified immunity. Plaintiff opposes their motion and has filed his own motion for summary judgment.

## FACTUAL BACKGROUND

### I.  Defendants' Version

On February 5, 2003 at approximately 1:13 AM, Defendant Rynhart was driving a marked patrol car in the City of Clearlake. (Rynhart Decl. ¶ 3.) Defendant Thomas was riding as a passenger in the patrol car operated by Defendant Rynhart. (Thomas Decl. ¶ 3.)

Defendants observed a blue 1985 Mercedes sedan turning into the parking lot of Wiseda's Resort located at 14375 Lakeshore Boulevard. (Rynhart Decl. ¶ 4.) Defendant Rynhart drove the patrol car into the parking lot and made consensual contact with Plaintiff, who was the driver and sole occupant of the Mercedes. (Id.) Defendant Rynhart asked Plaintiff to provide identification, whereupon Plaintiff produced his California Department of Corrections and Rehabilitation identification card. (Id. ¶ 5.) Plaintiff told Defendant Rynhart that he was in the process of obtaining a California driver's license and that he was on active parole for attempted murder. (Id.)

Defendant Rynhart proceeded to conduct a parole search of Plaintiff while Defendant Thomas stood nearby and observed. (Id. ¶ 6; Thomas Decl. ¶ 4-5.) During the search, Defendant Rynhart recovered "a large sum of U.S. currency in various denominations from the rear right pants pocket (later counted as $1,313.00)." (Esberg Decl., Ex. B at 3.) As Defendant Rynhart continued his search, he observed Plaintiff "discreetly reach his hand into the left exterior pocket of his coat, remove an item from that pocket" and "put something into his mouth." (Rynhart Decl. ¶ 7.) Defendant Rynhart immediately shouted several times to Plaintiff to "spit it out". (Id.) Defendant

2

Thomas heard the shouting and approached Plaintiff and Defendant Rynhart. (Thomas Decl. ¶ 5.) Defendant Rynhart placed Plaintiff into a rear wrist lock. (Rynhart Decl. ¶ 8.)

Defendant Thomas placed his hand on Plaintiff's neck without applying pressure and instructed Plaintiff to spit out what was in his mouth. (Thomas Decl. ¶ 7-8.) Defendants observed Plaintiff continuing to chew and swallow the contents in his mouth. (Id.; Rynhart Decl. ¶ 8.) Defendant Thomas removed his hand from Plaintiff's neck and made no further physical contact with Plaintiff. (Thomas Decl. ¶ 8.)

Defendant Rynhart handcuffed Plaintiff to prevent him from placing other objects into his mouth. (Rynhart Decl. ¶ 9.) Defendants called paramedics to the scene to examine Plaintiff, who continued to attempt to swallow the contents in his mouth and refused to comply with Defendants' repeated instruction to spit it out. (Id. ¶ 10; Thomas Decl. ¶ 9.) After approximately ten minutes of waiting for the paramedics to arrive, Plaintiff ended up spitting out a clear plastic bag containing a white powder. (Rynhart Decl. ¶ 11-12; Thomas Decl. ¶ 10.)

A paramedics unit from Redwood Empire Life Support arrived and examined Plaintiff. (Rynhart Decl. ¶ 13.) The paramedics informed Defendants that Plaintiff was not displaying any signs or symptoms of having ingested a controlled substance. (Id.) Defendant Rynhart asked Plaintiff if he had swallowed anything else before spitting out the plastic bag and Plaintiff responded that he had not. (Id.) The paramedics released Plaintiff to the custody of Defendants. (Id.)

Defendants placed Plaintiff under arrest for possession of cocaine, driving without a license and a parole violation, and transported him to LCJ.[1] (Id. ¶ 14.)

The booking records at LCJ, including Plaintiff's photo and the intake questionnaire, revealed that Plaintiff had no condition for which pre-booking medical treatment was required or received, that he was alert and oriented, and that he had no visible signs of trauma, wounds or illness. (Esberg Decl. ¶ 9.)

---

[1] In 2004, a jury found Plaintiff guilty of transportation of cocaine and possession of cocaine base. People v. Seals, No. A110016, slip op. at 3 (Cal. Ct. App. June 13, 2006). Plaintiff appealed, and the California Court of Appeal affirmed the convictions on June 13, 2006. Id. at 10.

## II.   **Plaintiff's Version**

In his verified complaint, Plaintiff offers sparse statements regarding the events surrounding his arrest on February 5, 2003.[2] Plaintiff states that Defendants followed him in their patrol car for over two miles, even though he was not violating any traffic laws. (Compl. at 5.) Plaintiff claims he was exiting his car and walking towards the stairs to his apartment when he heard Defendant Rynhart call him a "nigger." (Id.)

Plaintiff claims Defendants "beg[an] to physically attack and choked [him] to a state of unconsciousness" and that "the ambulance had to be called to come and check [him] out immediately." (Id. at 6.) Plaintiff also claims that Defendants "planted drugs on [him]." (Id.)

Plaintiff sent a citizen's complaint against Defendants to the Lake County Sheriff's Department in October, 2003. (Id. at 7.) While the citizen's complaint is not included in the record, a response from Lake County Sheriff's Department dated March 26, 2004 is included with Plaintiff's verified complaint. (Attach. to Compl. at 82, Letter from Lake County Sheriff Rodney K. Mitchell dated Mar. 26, 2004.) The letter states that "[a] thorough investigation into your complaint was conducted and completed. The result of which was not founded. Therefore, the department will take no additional action or corrective measures." (Id.)

On April 6, 2004, Plaintiff filed a claim for damages against the County of Lake stemming from his February 5, 2003 arrest. (Attach. to Compl. at 74, Claim for Damages Against the County of Lake dated Apr. 6, 2004.) In his claim, Plaintiff restated his allegations against Defendants. Question nine on the claim form asks for a statement of specific injuries, damages, or losses sustained. Plaintiff's response was: "money confiscated, physical abuse, physical and mental stress,

---

[2] The statements in Plaintiff's complaint that are based on personal knowledge may be considered as evidence in opposition to the summary judgment motion because the complaint was signed under penalty of perjury. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). Nothing in Plaintiff's opposition briefs (docket nos. 66, 68), however, can be considered as evidence because they were not verified. Cf. Johnson v. Meltzer, 134 F.3d 1393, 1400 (9th Cir. 1998) (verified motion functions as an affidavit). Plaintiff was cautioned about summary judgment requirements and consequences, see Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), in the Court's Order of Service.

4

incarceration, violation of my Fourteenth Amendment Rights, Due Process, racial discrimination, racial profiling . . . [a]lso my Fourth and Eighth Amendment [and] cruel and unusual punishment." (Id.) No additional details regarding the arrest were provided on the claim form. Further, Plaintiff did not inform the Court about the resolution of his claim.

On April 14, 2004, Plaintiff filed an inmate request form at LCJ. On the request form, Plaintiff reiterated the excessive force claim that "[Defendant Rynhart] and his partner called me a nigger and attacked me." (Attach. to Compl. at 73, LCJ Inmate Request Form dated Apr. 14, 2004.) Plaintiff, however, provided no additional facts or details regarding the attack. LCJ staff responded to Plaintiff's request on April 19, 2004. (Id.) The response stated that "per [Defendant] Rynhart's Commander, your allegations were investigated and you were notified that [Defendant Rynhart] violated no law and he violated no policy effecting your arrest." (Id.)

## DISCUSSION

### I. Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. See id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment

5

may be granted. See Liberty Lobby, 477 U.S. at 249-50.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Liberty Lobby, 477 U.S. at 248. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323. At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). A court may not disregard direct evidence on the ground that no reasonable jury would believe it. See id. (where nonmoving party's direct evidence raises genuine issues of fact but is called into question by other unsworn testimony, district court may not grant summary judgment to moving party on ground that direct evidence is unbelievable). The district court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. Wall v. County of Orange, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury.").

The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence). Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. Id. at 1029. "The district court need not examine the entire file for evidence establishing a genuine issue

6

of fact." Id. at 1031.

A verified complaint may be used as an opposing affidavit under Rule 56(e), as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder, 55 F.3d at 460& nn.10-11 (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); see also Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit). However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001).

## II. Defendants' Motion for Summary Judgment

### A. Use of Excessive Force in Effecting an Arrest

The use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983. See Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir. 1986), overruled on other grounds by Graham v. Connor, 490 U.S. 386 (1989). Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. See Graham, 490 U.S. at 394-95; Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994).

Determining whether the force used to effect a particular seizure is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Graham, 490 U.S. at 396. The force which is applied must be balanced against the need for that force. Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001). Because the reasonableness test is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. These factors are not exclusive, however, and the totality of the particular circumstances of each case must be considered. See Fikes v. Cleghorn, 47 F.3d 1011, 1014 (9th Cir. 1995) (jury instruction complies with Graham by focusing on totality of circumstances); Forrester, 25 F.3d at 806 n.2; see also Brewer v. City of Napa, 210 F.3d 1093, 1097 (9th Cir. 2000) (jury need not be instructed to specifically consider "alternative courses of action" available to defendant police officers).

The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation, see Graham, 490 U.S. at 397, and without the "20/20 vision of hindsight," see id. at 396. Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. See Forrester, 25 F.3d at 806-07; see also Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994) (requiring officers to find and choose least intrusive alternative would require them to exercise superhuman judgment).

A plaintiff may prove excessive force even where there is no significant injury. See Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir. 2001) ("Headwaters I") (whether use of force poses a risk of permanent or significant injury is a factor to be considered in evaluating the need for the force used in a particular case, but it is certainly not dispositive), judgment vacated on other grounds, 534 U.S. 801 (2001); Wilks v. Reyes, 5 F.3d 412, 416 n.1 (9th Cir. 1993) (plaintiff entitled to award of nominal damages even if no actual damage suffered).

Unreasonable force claims are generally questions of fact for a jury. See Headwaters I, 240 F.3d at 1198; Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995) (citing Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991), cert. denied, 505 U.S. 1206 (1992)). Although excessive force cases can be decided as a matter of law, they rarely are because the Fourth Amendment test for reasonableness is inherently fact-specific. See Headwaters I, 240 F.3d at 1198. However, the defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor

8

of the plaintiff, that their use of force was objectively reasonable under the circumstances. See Scott, 39 F.3d at 915. The issue becomes one of defining an objectively reasonable range of conduct. See, e.g., Saman v. Robbins, 173 F.3d 1150, 1155-57 (9th Cir. 1999) (finding officer's split-second judgment to administer a single kick to subdue plaintiff in tense, uncertain and dangerous situation in which one officer had already been shot objectively reasonable as a matter of law); Mendoza v. Block, 27 F.3d 1357, 1362-63 (9th Cir. 1994) (finding the use of a police dog resulting in several bites to secure robbery suspect who was believed to be armed objectively reasonable under the circumstances).

Defendants claim that they are entitled to summary judgment because: (1) Defendant Rynhart handcuffed Plaintiff "to prevent [him] from placing additional substance in his mouth;" (2) Defendant Thomas put his hand on Plaintiff's neck "to impress upon the plaintiff the need for [him] to spit out the substance and the seriousness of harm that could occur should [he] swallow the substance;" and (3) Defendants' use of force was objectively reasonable in light of Plaintiff's "persistent resistance to the officers' command to spit out the substance."

Even if the Court must accept Plaintiff's factual allegations as true for purposes of summary judgment, the Court finds that he has not set forth specific allegations regarding Defendants' conduct or the resulting harm. In his verified complaint, Plaintiff simply states that Defendants "beg[an] to physically attack and choked [him] to a state of unconsciousness." (Compl. at 6.) As mentioned above, Plaintiff's affidavit in the form of his verified complaint, is cognizable to establish a genuine issue of material fact so long as it states facts based on personal knowledge and is not too conclusory. See Rodriguez, 265 F.3d at 902. "That a statement is self-serving [may] bear[] on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 768 (9th Cir. 2001); Fed. R. Civ. P. 56(e). However, the Court is mindful that interested parties cannot concoct genuine issues of material fact simply by submitting conclusory -- and unsupported -- statements in the form of affidavits. See United States v. Shumway, 199 F.3d 1093, 1104 (9th Cir. 1999) ("If the affidavit stated only conclusions, . . . then it would be too conclusory to be cognizable . . . .").

9

Here, Plaintiff's conclusory allegations unsupported by factual data are insufficient to defeat Defendants' motion for summary judgment. <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 922 (9th Cir. 2001) (finding the district court did not err in granting summary judgment because plaintiff failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable). The Court finds that Plaintiff's claim that Defendants' actions left him unconscious is unsubstantiated because the record is devoid of any evidence that he was found unconscious when paramedics from Redwood Empire Life Support arrived at the scene.[3] According to Defendants, they "saw the emergency personnel examine [Plaintiff]," and they observed that Plaintiff was alert at all times. (Thomas Decl. ¶ 11; Rynhart Decl. ¶ 15.) Defendant Thomas states, "I was informed by the emergency medical personnel that [Plaintiff] was fine, and he was released by the medical personnel to Deputy Rynhart and myself and taken into custody." (Thomas Decl. ¶ 11.) Defendant Rynhart states, "At no time, from the time Deputy Thomas and I first approached [Plaintiff] until he was taken to the Lake County Jail, did I observe [Plaintiff] lose consciousness or otherwise appear to be in physical pain or distress. [Plaintiff] stood upright on his own power the entire time Deputy Thomas and I were with him. [Plaintiff] made no complaints at the scene of his arrest concerning any discomfort or injury." (Rynhart Decl. ¶ 15.) The booking records at LCJ revealed that Plaintiff was alert and oriented and had no visible signs of trauma, wounds or illness. (Esberg Decl. ¶ 9.) Therefore, the Court finds that even viewed in a light most favorable to Plaintiff, the record does not support his allegation in his verified complaint that Defendants "beg[an] to physically attack and choked [him] to a state of unconsciousness."

Rather, the record shows that on February 5, 2003, Defendants were conducting a parole search on Plaintiff. During that search, Defendants found $1,313.00 in cash, and eventually they

---

[3] Plaintiff has filed a discovery motion requesting copies of "medical reports" at the time of his arrest (docket no. 59). The record shows that Plaintiff's defense counsel hired an investigator to locate the paramedics who responded to the scene of Plaintiff's arrest, but the investigator was not able to locate them because Redwood Empire Life Support Services is no longer doing business in Lake County. (Attach. to Pl.'s Notice to Appeal [docket no. 28], Letter from Christine Dubois, Esq. dated Aug. 14, 2006 at 1.) Defendant Thomas states that he too was unable to locate the records from the paramedics' evaluation of Plaintiff on February 5, 2003. (Thomas Decl. ¶ 14.) Accordingly, Plaintiff's discovery motion is DENIED.

recovered from Plaintiff a "clear plastic bag containing white powder." While Plaintiff claims that Defendants "planted" drugs on him, there is no dispute that the white power had the appearance of a controlled substance. Prior to Defendants' alleged use of force, Defendant Rynhart claims that he saw Plaintiff put something in his mouth. Plaintiff does not directly contradict this claim in his verified complaint. Defendant Thomas admits to placing his hand on Plaintiff's neck and instructing Plaintiff to spit out what was in his mouth. (Thomas Decl. ¶ 7-8.) In his verified complaint, Plaintiff does not contradict Defendants' claim that he attempted to chew and swallow the substance in his mouth despite their commands for him to spit it out. Defendant Thomas states that based on his training and experience, he believed that Plaintiff was "attempting to destroy evidence" and that "[Plaintiff's] attempt to ingest some substance or material that was potentially physically harmful or life threatening to him." (Id. ¶ 8.) When Plaintiff did not comply with Defendants' order to spit it out, Defendant Thomas claims he removed his hand from Plaintiff's neck and made no further physical contact with Plaintiff. (Id.) Defendant Rynhart admits to placing Plaintiff into a rear wrist lock after witnessing him put something in his mouth. (Rynhart Decl. ¶ 8.) Further, he states that he saw Defendant Thomas "plac[ing] his hand on the front of [Plaintiff's] neck." (Id.) Defendant Rynhart "observed [Plaintiff] move in a motion that made it appear he was attempting to chew and swallow whatever he had placed in his mouth" and then saw Defendant Thomas remove his hand from Plaintiff's neck. (Id.) Additionally, he admits to handcuffing Plaintiff at that point "to prevent [Plaintiff] from placing any other objects in his mouth. (Id. ¶ 9.) For reasons stated above, the Court has already found that Plaintiff failed to set forth specific facts showing that in trying to stop him from swallowing the bag with white powder, Defendants "beg[an] to physically attack and choked [him] to a state of unconsciousness." The Court notes Plaintiff claims that both Defendants "attacked" and "choked" him; however, the record shows that Defendant Rynhart placed him into a rear wrist lock and eventually handcuffed him, while only Defendant Thomas admits to placing his hand on Plaintiff's neck. Taking the facts in the light most favorable to Plaintiff the force Defendants' used under the totality of the circumstances was objectively reasonable for reasons outlined below:

11

### 1. **Defendant Rynhart**

Defendants claim that Defendant Rynhart's use of force was objectively reasonable when he handcuffed Plaintiff to prevent him from placing additional substance in his mouth. While unnecessarily tight hand-cuffing may constitute excessive force, see LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000), no such allegation is made here by Plaintiff in his verified complaint. The way in which a person is handcuffed also may constitute excessive force. See Meredith v. Erath, 342 F.3d 1057, 1061(9th Cir. 2003) (grabbing non-violent resident by the arms, forcibly throwing her to the ground and twisting her arms while handcuffing her during search of premises for evidence against another person was objectively unreasonable and a violation of the Fourth Amendment). Here, Plaintiff simply states in his verified complaint that he was "attacked" by Defendants; however, he does not specifically complain of any discomfort or resulting injury from the handcuffs being placed on his wrists. Furthermore, the record does not show that Plaintiff had any physical injuries resulting from Defendant Rynhart placing him into a rear wrist lock and handcuffing him. The Court finds no constitutional violation because Defendant Rynhart acted within a reasonable range of conduct when he put Plaintiff into a rear wrist lock and handcuffed him to prevent him from putting additional substances into his mouth. See Forrester, 25 F.3d at 806-07 (use of minimal and controlled force in manner designed to limit injuries reasonable); cf. Johnson v. County of L.A., 340 F.3d 787, 792-93 (9th Cir. 2003) (finding deputy sheriff's pulling and twisting of armed bank robbery suspect to extract him from the back seat of his car and take him into custody following a high-speed car chase and crash objectively reasonable as a matter of law).

### 2. **Defendant Thomas**

Defendants claim that Defendant Thomas's use of force was objectively reasonable when he put his hand on Plaintiff's neck while Plaintiff was attempting to swallow a substance that may have been harmful.

The Court must now determine whether the force used by Defendant Thomas was reasonable by balancing the nature and quality of the force applied against the need for that force. See Graham, 490 U.S. at 396. As mentioned above, the relevant factors to this inquiry include, but are not limited

12

to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Because these factors are not exclusive, the totality of the particular circumstances of each case must be considered. See Fikes, 47 F.3d at 1014.

Here, Defendant Thomas claims that he believed that it was necessary for him to use force because it would be harmful to Plaintiff if he swallowed the substance in his mouth. (Thomas Decl. ¶ 8.) Furthermore, the force used by Defendant Thomas was minimal because there is no evidence in the record of any bruises or other visible signs of injury to Plaintiff's neck. The Court finds that under the totality of the circumstances, Plaintiff's action posed a threat to himself and was consistent with destroying evidence; therefore, Defendant Thomas's use of force was objectively reasonable. See Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999) (no constitutional violation when officer executed a search of defendant's mouth for crack cocaine and choked him, causing problems breathing, inability to swallow, and dizziness).

### 3. Conclusion

After resolving all factual disputes in favor of Plaintiff, the Court concludes that both Defendants Rynhart's and Thomas's use of force was objectively reasonable under the circumstances. See Scott, 39 F.3d at 915. Plaintiff has not established a "genuine issue for trial" concerning the excessiveness of the force Defendants used during his arrest on February 5, 2003. Celotex, 477 U.S. at 324. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of excessive force during arrest because the record taken as a whole would not lead a rational trier of fact to find for Plaintiff. See Henderson v. City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002) (summary judgment in favor of defendant proper where evidence in the record in support of plaintiff's excessive force claim was "woefully sparse"); see also Arpin, 261 F.3d at 922 (plaintiff's statement that she "did not resist arrest in any way" is conclusory allegation that is insufficient to defeat defendant's motion for summary judgment).

### B. Qualified Immunity

In the alternative, Defendants claim that they are entitled to qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law'"; defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." See Wilson v. Layne, 526 U.S. 603, 603 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999). The threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier, 533 U.S. at 201. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. Id.

If a violation could be made out on the allegations, the next sequential step is to ask whether the right was clearly established. Id. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity

14

is appropriate. Id.[4]  The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. See Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

Contrary to earlier holdings of the Ninth Circuit, the United States Supreme Court has determined that the inquiries for qualified immunity and excessive force are distinct. Saucier v. Katz, 533 U.S. 194, 204 (2001).  On the issue of excessive force, the reasonableness of the officer's belief as to the appropriate level of force should be judged from an "on-scene" perspective. Id. (citing Graham v. O'Connor, 490 U.S. 386, 396 (1989)).  If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for example, the officer would be justified in using more force than in fact was needed. Id.  The qualified immunity inquiry, on the other hand, has a further dimension.  The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. Id.  It is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. Id.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense. Id.

Graham does not always give a clear answer as to whether a particular application of force will be deemed excessive by the courts. Id.  This is the nature of a test which must accommodate limitless factual circumstances. Id.

In the excessive force context, the first step is an inquiry into the objective reasonableness of the officer's belief in the necessity of his actions; the second step is an inquiry into the objective reasonableness of the officer's belief in the legality of his actions. Wilkins v. City of Oakland, 350

---

[4] This is not to say that the formulation of a general rule is beside the point, nor is it to insist the courts must have agreed upon the precise formulation of the standard. Saucier, 533 U.S. at 202. For example, if various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand, the officer would not be entitled to qualified immunity based simply on the argument that courts had not agreed on one verbal formulation of the controlling standard. Id.

F.3d 949, 954-55 (9th Cir. 2003). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Id. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. Qualified immunity also shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.

In applying the first prong of Saucier, the Court must determine whether there was a constitutional violation. In doing so, the Court has found that, viewing the evidence in the light most favorable to Plaintiff, Defendants' actions did not amount to a Fourth Amendment violation. Even if a constitutional violation had occurred, it would not have been clear to a reasonable officer in Defendants' position that his conduct violated the prohibition against excessive force during arrest. It is not disputed that, at the time of Defendants' actions, the use of excessive force by a law enforcement officer in effectuating an arrest was a violation of the Fourth Amendment. At issue is whether Defendants' actions were objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397 (citation and internal quotation marks omitted). Plaintiff asserts that Defendants planted the drugs on him and "beg[an] to physically attack and choked [him] to a state of unconsciousness." However, these factual disputes are not dispositive because the qualified immunity analysis considers what happened from Defendants' point of view and assesses its reasonableness objectively. See Saucier, 533 U.S. at 205. When Defendant Rynhart conducted a parole search of Plaintiff, he saw him put something in his mouth. They commanded Plaintiff to spit it out, but he did not comply. From Defendants' vantage point, a reasonable officer could have thought that Plaintiff was attempting to ingest a controlled substance. The record shows that while Plaintiff alleges he was "attacked" and "choked," Defendant Thomas only admits to placing his hand on Plaintiff's neck to persuade him to spit it out, and not intending to choke him. According to Defendant Thomas, he believed that

16

1   Plaintiff was attempting to destroy evidence and that Plaintiff's attempt to ingest what he believed
2   was a controlled substance was potentially harmful.  (Thomas Decl.¶ 8.)  Again, the Court notes that
3   Plaintiff claims that both Defendants "attacked" and "choked" him.  Taking the facts in the light
4   most favorable to Plaintiff, the Court finds that a reasonable officer in Defendants' position could
5   have believed that their acts during Plaintiff's arrest comported with the Fourth Amendment in light
6   of clearly established law and the information Defendants possessed at the time of the incident.  See
7   Saucier, 533 U.S. at 205 (citing Graham, 490 U.S. at 396) (reasonableness of officer's belief as to
8   appropriate level of force should be judged from an on-scene perspective).
9       Therefore, under Saucier, Defendants are entitled to qualified immunity with respect to
10  Plaintiff's claim of excessive force and thus are entitled to summary judgment as a matter of law.

### III.    Plaintiff's Motion for Summary Judgment

Plaintiff has filed a motion for summary judgment wherein he states, "Plaintiff will argue that these names defendants John Rynhart, Lyle Thomas and Rodney Mitchell[5] have presented a [sic] insufficient Motion Request for Summary Judgment by not presenting for review by this Court and jury any kid of adequate factual documentation to defend against the plaintiff [sic] excessive force claim against them thereby forcing this Court and jury to deny the Defendants' Motion Request for Summary Judgment against the plaintiff and granting summary judgment in favor of the Plaintiff."  (Pl.'s Opp'n [docket no. 68] at 15.)  Because the parties have filed cross-motions for summary judgment, the Court has considered all of the evidence submitted by Defendants in support of his motion, as well as the admissible evidence submitted by Plaintiff, specifically his verified complaint, to evaluate whether summary judgment should be granted to Plaintiff.  See Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

For the reasons discussed above, the Court concludes that Plaintiff has not established that Defendants violated the Fourth Amendment by using excessive force during Plaintiff's arrest on February 5, 2003.  When the Court, as it must, regards as true Defendants' evidence and draws all

---

[5] As mentioned above, the Court dismissed Defendant Mitchell in its Order of Service dated May 23, 2007.

17

reasonable inferences in favor of them, Celotex, 477 U.S. at 322-23, no genuine issues of material fact exist which entitle Plaintiff to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment (docket no. 68) is DENIED.

### IV. Pending Motion

Plaintiff filed an untimely motion for leave to amend his complaint after Defendants moved for summary judgment. Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiff may amend as of right at any time prior to the filing of a responsive pleading and thereafter only with leave of court. Leave must be freely granted "when justice so requires." Plaintiff could have moved to amend at any time prior to the filing of the motion for summary judgment but did not. Defendants would be substantially prejudiced by such an amendment coming at the eleventh hour, when both parties have moved for summary judgment and substantial delay would result if the amendment was granted.[6] Furthermore, Plaintiff has not demonstrated any reason for his late amendment. Accordingly, leave to amend his complaint (docket no. 70) is DENIED.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (docket no. 61) and DENIES Plaintiff's motion for summary judgment (docket no. 68). The Clerk of the Court shall enter judgment in favor of Defendants, terminate all pending motions, including

---

[6] Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of amendments and, in general, leave shall be freely given when justice so requires. Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994). While mere delay in seeking to amend is not grounds to deny amendment, leave need not be granted, where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. Id.; see also Roberts v. Arizona Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (district court's finding of prejudice to defendants sufficient to deny amendment, because motion to amend came at eleventh hour, when summary judgment pending and discovery period had closed, affirmed as proper exercise of district court's discretion).

1  Plaintiff's discovery motion and motion to amend complaint (docket nos. 59, 70), and close the file.

2      This Order terminates Docket nos. 59, 61, 68 and 70.

3      IT IS SO ORDERED.

4  DATED: September 28, 2007

                                          SAUNDRA BROWN ARMSTRONG
5                                            United States District Judge

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3    UNITED STATES DISTRICT COURT
4    FOR THE
5    NORTHERN DISTRICT OF CALIFORNIA
6
7
8  SEALS,                                           Case Number: CV04-03764 SBA
9           Plaintiff,                              **CERTIFICATE OF SERVICE**
10
11   v.
12  MITCHELL et al,
13          Defendant.                       /
14
15 I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

16 That on October 12, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.
17
18
19
20
21  Michael Izell Seals V77488
    California State Prison - San Quentin
22  San Quentin, CA 94974

23  Dated: October 12, 2007
                                 Richard W. Wieking, Clerk
24                               By: LISA R CLARK, Deputy Clerk
25
26
27
28

P:\PRO-SE\SBA\CR.04\Seals3764.MSJ.frm         20